UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 04 CR 237 |
| v. ) | |
| ) | Judge John W. Darrah |
| AMEN E. JUMAH ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

On March 11, 2004, a grand jury returned an indictment against Defendant, Amen E. Jumah, charging Jumah with knowingly and intentionally possessing and distributing pseudoephedrine, knowing and having reasonable cause to believe it would be used to manufacture a controlled substance in violation of 21 U.S.C. § 841(c). On January 27, 2006, Defendant was convicted by a jury of the charge. In April 2006, this Court granted Defendant's Motion for a New Trial, finding that the denial of Defendant's proposed jury instruction with respect to the public authority defense was in error. In light of the Court's ruling, the Court did not rule on Defendant's remaining arguments for a new trial and motion for judgment of acquittal. The Government appealed the Court's ruling; and, in July 2007, the Seventh Circuit Court, relying on recent Supreme Court guidance, *see Dixon v. United States*, 126 S. CT 2437 (2006), reversed the Court's April 2006 ruling with instructions to reinstate the jury's verdict. *See United States v. Jumah*, 493 F.3d 868 (2007). Defendant now seeks a ruling on the remaining issues raised in his previous Motion for a New Trial and Motion for Judgment of Acquittal.

## LEGAL STANDARD

A court may grant a motion for a new trial "if the interests of justice so require." *See* Fed. R. Crim. P. 33. The decision to grant such a motion is within the sound discretion of the trial court. *See United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (*Reed*). A new trial is in the interests of justice where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuziar*, 881 F.2d 466, 470 (7th Cir. 1989). In making this analysis, the court may not re-weigh the evidence and set aside a verdict because the court feels that some other result would be more reasonable. "The evidence must preponderate heavily against a verdict, such that it would be a miscarriage of justice to let the verdict stand." Such motions are granted "sparingly and with caution, doing so only in those really 'exceptional cases.'" *Reed*, 875 F.3d at 113, quoting *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985).

A motion for judgment of acquittal should only be granted if there is insufficient evidence to sustain the conviction. *See United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) (*O'Hara*). The evidence is viewed in the light most favorable to the prosecution, and a conviction will only be overturned if the record contains no evidence on which a rational jury could have returned a guilty verdict. *See O'Hara*, 301 F.3d at 569-70.

## BACKGROUND

Defendant argues that his right to a fair trial was violated because the Government failed to disclose *Brady* and *Giglio* evidence.

In December 2005, Defendant's counsel subpoenaed the Chicago Drug Enforcement Agency ("DEA"), requesting any and all documents pertaining to Defendant's cooperation into the investigation of Ali Qasem, a cooperating witness, including investigations conducted in Illinois,

2

Los Angeles, Detroit, and Las Vegas. These subpoenas were turned over to the Government (the United States Attorney's Office). Later that same month, Defendant's counsel issued additional subpoenas to four Los Angles DEA agents – Bradley Clemmer, Efrem Lapuz, George Newland, and Ted Salamy. These subpoenas were also turned over to the Government. Subsequently, the Government filed a Motion to Quash Jumah's Trial Subpoenas; and Defendant filed a Motion for Immediate Disclosure of Favorable Evidence. In his motion, Defendant argued that Newland and Salamy were necessary witnesses because they were involved in debriefing Qasem. On January 12, 2006, the Court granted the Government's motion to quash Defendant's subpoenas as to Newland and Salamy.

On the evening of January 21, 2006, the Saturday before trial commenced, the Government faxed Defendant's counsel a letter regarding an interview the prosecutors conducted with Qasem that day. The letter stated that Qasem informed the Government of previously undisclosed, illegal drug transactions, conversations, and meetings between Qasem and Defendant. In the letter, the Government disclosed the information Qasem provided about the history of his dealings with Defendant.

In light of the new information obtained from Qasem, on January 22, 2006, the Government filed an Emergency Motion *in Limine* to Permit Evidence and Argument of Defendant's Prior Uncharged Criminal Acts as Inextricably Intertwined with the Instant Offense. On January 23, 2006, the first day of trial, the Court denied the Government's motion.

At trial, the Government called Qasem as a witness. During Qasem's direct testimony, the Government did not illicit testimony regarding his prior dealings with Defendant. On cross-examination, defense counsel began asking Qasem about that issue. The Government requested a

3

side bar and asked the Court to reconsider its ruling on the recent motion. The Court reaffirmed its ruling denying the motion. Defense counsel resumed cross-examination but did not further inquire about his prior dealings with Defendant.

## ANALYSIS

The government has an obligation to disclose favorable evidence that is material to the case, including exculpatory and impeachment evidence. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (*Brady*). The Government's suppression of impeachment evidence can give rise to a *Brady* violation. *See Giglio v. United States*, 405 U.S. 150, 153 (1999) (*Giglio*). To establish a *Brady* or *Giglio* violation, a defendant must demonstrate that: (1) the evidence has been suppressed by the Government, (2) the evidence at issue is favorable to the accused because it is either exculpatory or impeaching, and (3) the suppression of the evidence resulted in prejudice. *See O'Hara*, 301 F.3d at 569.

Defendant argues that a *Brady/Giglio* violation occurred because the Government failed to disclose information/documents relating to Qasem's prior dealings with Defendant and that such information was essential to impeaching Qasem's testimony. However, the Government was unaware of Qasem's and Defendant's prior dealings at issue until January 21, 2006, at which time the Government timely disclosed that information to Defendant. The transactions at issue were not memorialized in any document other than the Government's January 21, 2006 letter to defense counsel based on the interview of Qasem the same day. The Government did not suppress evidence that was not known to it at that time. Thus, there was no *Bardy/Giglio* violation.

4

Defendant also argues that his waiver of his right to testify was not voluntary, knowing or intelligent because of the Government's failure to disclose *Brady* and *Giglio* evidence. As addressed above, there was no *Brady* or *Giglio* violation; thus, the alleged violation did not affect Defendant's waiver of his right to testify.

Furthermore, based on the evidence at trial, a rational trier of fact could have found that the Defendant was guilty of the charge against him.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for a New Trial and Motion for Judgment of Acquittal, based on the arguments not previously addressed by the Court, are denied.

Dated: January 29, 2008

JOHN W. DARRAH
United States District Court Judge

5